**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MATTHEW JONES,<br><br>            Plaintiff,<br><br>v.<br><br>KAMAN CORPORATION, AISHA M. BARRY, A. WILLIAM HIGGINS, SCOTT E. KUECHLE, MICHELLE J. LOHMEIER, JENNIFER M. POLLINO, NIHARIKA T. RAMDEV, and IAN K. WALSH,<br><br>            Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Matthew Jones ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Kaman Corporation ("Kaman" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by affiliates of Arcline Investment Management, LP ("Arcline").[1]

2. On January 18, 2024, Kaman entered into an Agreement and Plan of Merger (the

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

"Merger Agreement") with Ovation Parent, Inc. ("Parent") and Parent's wholly owned subsidiary Ovation Merger Sub, Inc. ("Merger Sub").[2]  The Merger Agreement provides that Arcline will acquire Kaman, with each share of Company common stock being converted into the right to receive $46.00 in cash.

3. The Company's corporate directors subsequently authorized the March 8, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] Parent and Merger Sub are affiliates of investment funds managed by Arcline.

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for April 17, 2024.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Kaman's principal executive offices are located in this District, rendering venue in this District appropriate.

**THE PARTIES**

9. Plaintiff is, and is and has been at all times relevant hereto, the owner of Kaman common stock.

10. Defendant Kaman is a Delaware corporation with its principal executive offices located at 1332 Blue Hills Avenue, Bloomfield, Connecticut 06002. Kaman's shares trade on the New York Stock Exchange under the ticker symbol "KAMN." Kaman conducts business in the aerospace & defense, industrial and medical markets. Kaman reports information in three business segments: Engineered Products, Precision Products, and Structures. The Engineered Products segment serves the aerospace and defense, industrial and medical markets providing sophisticated, proprietary aircraft bearings and components; super precision, miniature ball bearings; proprietary spring energized seals, springs, and contacts; and wheels, brakes and

related hydraulic components for helicopters and fixed-wing and UAV aircraft. The Precision Products segment serves the aerospace and defense markets providing precision safe and arming solutions for missile and bomb systems for the U.S. and allied militaries; subcontract helicopter work; restoration, modification and support of the Company's SH-2G Super Seasprite maritime helicopters; support of the Company's heavy lift K-MAX® manned helicopter; and development of the *KARGO UAV* unmanned aerial system, a purpose built autonomous medium lift logistics vehicle. The Structures segment serves the aerospace and defense and medical end markets providing sophisticated complex metallic and composite aerostructures for commercial, military, and general aviation fixed and rotary wing aircraft, and medical imaging solutions.

11. Defendant Aisha M. Barry has been a director of the Company at all relevant times.

12. Defendant A. William Higgins has been a director of the Company at all relevant times.

13. Defendant Scott E. Kuechle has been a director of the Company at all relevant times.

14. Defendant Michelle J. Lohmeier has been a director of the Company at all relevant times.

15. Defendant Jennifer M. Pollino has been Lead Independent Director of the Company at all relevant times.

16. Defendant Niharika T. Ramdev has been a director of the Company at all relevant times.

4

17.     Defendant Ian K. Walsh ("Walsh") has been Chairman of the Board and President, Chief Executive Officer ("CEO") and a director of the Company at all relevant times.

18.     Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

19.     On January 19, 2024, the Company announced in relevant part:

BLOOMFIELD, Conn. – JANUARY 19, 2024 – Kaman Corp. (NYSE:KAMN) ("Kaman" or the "Company") today announced that it has entered into a definitive agreement to be acquired by Arcline Investment Management, L.P. ("Arcline"), a growth-oriented private equity firm with deep experience investing in technology-driven, meaningful-to-the-world industrial businesses, in an all-cash transaction with a total enterprise value of approximately $1.8 billion. Upon completion of the transaction, Kaman will become a privately held company.

Under the terms of the agreement, Kaman shareholders will receive $46.00 per share in cash.  The per share purchase price represents a premium of approximately 105% over Kaman's closing share price on January 18, 2024, the last full trading day prior to the transaction announcement, and a premium of approximately 110% over the volume weighted average price (VWAP) of Kaman common stock for the 90 days ending January 18, 2024.

"Following robust engagement with Arcline and careful evaluation of other potential value creation opportunities, we are pleased to have reached this agreement," said Ian K. Walsh, Kaman Chairman, President and Chief Executive Officer.  "Given the rigorous review of alternatives we recently completed, we are confident this transaction maximizes value for shareholders and is in the best interest of Kaman as well as our employees, customers and other stakeholders."

Mr. Walsh continued, "Over the last several quarters, we have made significant progress executing our strategy by transforming our portfolio, through investing in innovation, pivoting to new growth technologies, and optimizing the Company's cost structure.  Arcline recognizes the strength of Kaman's leadership and team, product portfolio and outstanding employees, and we look forward to benefiting from increased resources, expertise and flexibility as a

private company post-closing. We thank Kaman's many valued employees for helping us reach this important milestone in the Company's history."

Arcline said, "We have tremendous respect and admiration for Kaman's team, history, and its portfolio of brands. Kaman has long been a trusted solutions provider of engineered components and subsystems to mission-critical markets, and we believe the Company is in a strong position to grow and benefit from attractive tailwinds. We look forward to working closely with Ian and the rest of the talented Kaman team to drive further growth through accelerated investments in both new product development and strategic acquisitions."

**Transaction Details**

The transaction, which has been unanimously approved by the Kaman Board of Directors, is expected to close in the first half of 2024, subject to customary closing conditions, including approval by Kaman shareholders and receipt of required regulatory approvals. Following its unanimous approval of the transaction, the Kaman Board of Directors recommends that Kaman shareholders vote in favor of the transaction. The transaction is not subject to a financing condition. Arcline intends to fund the transaction with a combination of committed debt and equity financing. Upon completion of the transaction, Kaman will become a wholly owned subsidiary of investment funds managed by Arcline and Kaman's common stock will no longer be listed on any public stock exchange.

**Advisors**

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Kaman, and Skadden, Arps, Slate, Meagher & Flom LLP and Wiggin and Dana LLP are acting as legal counsel to Kaman.

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Arcline and Latham & Watkins LLP and Paul Hastings LLP are acting as legal counsel to Arcline.

**The Materially Incomplete and Misleading Proxy Statement**

20. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on March 8, 2024. The Proxy Statement, which recommends that Kaman stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading

information, concerning: (a) the financial forecasts for Kaman; and (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); (c) potential conflicts of interest faced by Company insiders; and (d) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

21. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts.

22. For example, the Proxy Statement sets forth that the Board held meetings on September 11 and September 18, 2023. According to the Proxy Statement, the September 11, 2023, Board meeting:

> was devoted primarily to a review and discussion of the Company's five-year plan [(the "September Projections")] that would form the basis of J.P. Morgan's preliminary valuation analysis, and the meeting held on September 18, 2023, was devoted primarily to a discussion of J.P. Morgan's preliminary valuation analysis and the consideration of the potential impact of various strategic alternatives[.]

Proxy Statement at 33. The Proxy Statement then sets forth that between December 12, 2023, and December 20, 2023, Kaman gave management presentations to Arcline and eight potential counterparties. The Proxy Statement states, "[e]ach management presentation was approximately three hours in duration and included reviews of the Company's business model, operations, strategy, and five-year financial projections [(the "December Projections")]." *Id.* at 35. The Proxy Statement, however, fails to disclose: (a) the September Projections; (b) a summary of the December Projections reviewed during the Company management presentations between December 12 and December 20, 2023; (c) the date(s) the final projections relied upon by J.P. Morgan in connection with rendering its fairness opinion set forth on page

7

51 of the Proxy Statement (the "Final Projections") were finalized by Kaman management, approved by the Board, and provided to J.P. Morgan; (d) a summary and quantification of the changes made to the September Projections to arrive at the December Projections; and (e) a summary and quantification of the changes made to the December Projections to arrive at the Final Projections.

23. Additionally, with respect to the Final Projections, the Proxy Statement sets forth Company management's assumptions underlying the projected revenue for each of the Company's Engineered Products, Precision Products and Structures segments. Yet, the Proxy Statement fails to disclose the Company's revenues for each segment over the projection period.

24. Moreover, with respect to the Final Projections, the Proxy Statement fails to disclose all line items underlying the calculation of: (a) EBIT; (b) Adjusted EBITDA; (c) Post-tax unlevered free cash flow; and (d) Pre-tax unlevered free cash flow.

25. Without this information, the statements in the Proxy Statement conveying the Final Projections as "reflecting the best currently available estimates and judgments by the Company's management as to the expected future results of operations and financial condition of the Company" (*id.* at 46) mislead Kaman stockholders about the fair value of their shares, causing them to make an uninformed decision in connection with whether to vote in favor of the Proposed Transaction.

***Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by J.P. Morgan***

26. The Proxy Statement fails to disclose material information concerning the financial analyses prepared by J.P. Morgan.

27. As to the *Discounted Cash Flow Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose: (a) the Company's terminal values; (b) the inputs and assumptions

8

underlying the discount rates ranging from of 8.50% to 10.50%; and (c) the Company's estimated net debt as of December 31, 2023, as provided by Company management.

28. As to the analysis of *Selected Trading Multiples* performed by J.P. Morgan, the Proxy Statement fails to disclose the respective multiples and financial metrics for each company.

29. As to the *Selected Transactions Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose the respective multiples and financial metrics for each transaction.

*Material Misrepresentations and/or Omissions Concerning Company Insiders' Potential Conflicts of Interest*

30. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any Company insiders have secured employment with the combined company upon consummation of the Proposed Transaction.

31. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Arcline and Kaman's executive officers and certain members of management, including who participated in all such communications, when they occurred and their content, as well as whether any of Arcline's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

32. The Proxy Statement fails to disclose material information concerning the background leading to the Proposed Transaction.

33. According to the Proxy Statement, the Company contacted 13 potential counterparties during the sale process, of which 12 counterparties entered into confidentiality agreements containing standstill provisions with the Company. Specifically, the Proxy Statement sets forth "[e]ach such confidentiality agreement contained customary standstill provisions (which did not prohibit the applicable potential counterparties from privately requesting waivers of such provisions and which terminated upon the entry into the Merger Agreement)." *Id.* at 35. The Proxy Statement then discloses that on January 1, 2024, the Company received an unsolicited indication of interest from a potential strategic buyer identified in the Proxy Statement as "Party C" "who was not one of the thirteen potential counterparties contacted by the Company between December 2023 and January 2024[.]" *Id.* at 36. Two days later, the Company executed a confidentiality agreement with Party C. It is unclear, however, whether the confidentiality agreement executed with Party C contains a similar standstill provision to the other 12 confidentiality agreements or whether Party C is currently precluded from submitting a topping bid for the Company by the terms of its confidentiality agreement.

34. The omission of the above-referenced information renders statements in the "Projections Prepared by the Company's Management," "Opinion of the Company's Financial Advisor," "Background of the Merger," and "Interests of the Directors and Executive Officers of the Company in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

35. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of the Company's Financial Advisor," "Background of the Merger," and "Interests of the Company's Directors and Executive Officers in the

Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

36. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Kaman**

37. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

38. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Kaman is liable as the issuer of these statements.

39. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

40. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

42. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

43. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants functioned as controlling persons of Kaman within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kaman and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

48.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

49.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons

acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 29, 2024

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

**TORNATORE LAW, LLC**

By: */s/ Sebastiano Tornatore*
Sebastiano Tornatore
50 Washington Street, Suite 1012
Norwalk, CT 06854
Telephone: (203) 928-8082
Fax: (203) 842-3911
E: sebastian@tornatorelawllc.com

*Attorneys for Plaintiff*